IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| RICHARD GRAJEDA, III, <br><br> Plaintiff, <br><br> v. <br><br> VAIL RESORTS INC., <br> VAIL MANAGEMENT COMPANY, and <br> OKEMO LIMITED LIABILITY COMPANY <br> d/b/a OKEMO MOUNTAIN RESORT, <br><br> Defendants. | ) <br> ) Case No. 2:20-cv-00165-cr <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## DEFENDANTS' MOTION TO LIMIT THE TESTIMONY OF PLAINTIFF'S EXPERT DICK PENNIMAN AND MEMORANDUM IN SUPPORT

Pursuant to Federal Rule of Evidence 702, Defendants Vail Resorts, Inc., Vail Management Company, and Okemo Limited Liability Company d/b/a Okemo Mountain Resort (collectively, "Okemo") move to exclude three opinions by Plaintiff's expert, Dick Penniman.

Mr. Penniman is a frequent litigation witness who holds himself out as an expert in ski safety. However, he seeks to offer opinions on a variety of other topics—injury causation, inherent risks, and snowmaking placement—that are inadmissible here for a variety of reasons. On these three issues, Mr. Penniman is an advocate, not an expert. As other courts have done, the Court should exclude certain of Mr. Penniman's opinions. *See, e.g.*, *DiFrancesco v. Win-Sum Ski Corp.*, No. 13CV148, 2017 WL 1046741, *14 (W.D.N.Y. Mar. 20, 2017) (excluding Mr. Penniman's opinions even though they "may be informed by his experience operating ski lifts, observing at ski resorts, and investigating skiing accidents" because "this expertise does not rise to the level that it should be credited as an expert").

First, Okemo moves to exclude Mr. Penniman's opinion that Plaintiff's injuries were not caused by an "inherent risk of skiing." This is a legal conclusion, not an expert opinion. Plaintiff

1

may not offer expert testimony that will usurp the court's function to instruct the jury on the applicable law. And even if this were an appropriate area for expert testimony, Mr. Penniman employed no methodology—reliable or otherwise—in arriving at his conclusion. He simply sets forth a dictionary definition of "inherent" and offers his personal view on whether Plaintiff's accident was the result of an "inherent" risk. This opinion lacks any reliable methodology.

Second, Okemo moves to exclude Mr. Penniman's opinion that Plaintiff's injury was caused by his collision with a snowmaking "pole" as opposed to the padded shield covering the pole. Mr. Penniman has no qualifications to offer this opinion and arrived at it based solely on the fact that *another witness* had never heard of a skier being seriously injured in a collision with the type of shield at issue here. This is also not "expert" testimony. It is an inference from other evidence that the jury could easily make on its own. And Mr. Penniman applied no methodology—scientific or otherwise—to analyze whether Plaintiff could have sustained this same injury had he collided with the shield.

Third, Okemo moves to exclude Mr. Penniman's opinion that Okemo was unreasonable for placing snowmaking equipment on the side of a ski trail. Mr. Penniman is not qualified to offer this opinion, and his basis for it is his personal belief—unsupported by literature, industry standards, or even his own experience—that nothing should be in the "fall line" of a beginner skier. Mr. Penniman bases this opinion on "common sense," not any reliable methodology.

**FACTUAL BACKGROUND**

This premises liability case involves an injury that Plaintiff sustained while skiing at Okemo in December 2019. Plaintiff was skiing fast when he swerved to avoid a group of children, lost control, fell, and slid backwards into a padded snowmaking tower on the side of the trail. Plaintiff claims that he slid under the padded shield and collided with a metal snowmaking pole, and that Okemo created an unreasonably dangerous condition by failing to properly place

the padding. Plaintiff also contends that the snowmaking pole should have been moved to the other side of the trail. Plaintiff disclosed Mr. Penniman as an expert. Mr. Penniman has a Bachelor's degree in Economics and is a former ski patroller in California. (Ex. A.) He is not an engineer or a doctor; he has no technical degrees or training. Among his opinions here are:

1. "The potential for colliding with and sustaining severe injury from an unprotected and exposed steel snowmaking stand-pipe on the Open Slope and Lower Mountain Road trails on the day of the incident was high and was not an inherent risk of recreational, beginner and lower skill-level skiing and snowboarding." (Ex. B at 11.)

2. "Had Okemo Mountain Resort . . . placed the Gilman Tower Shield flush on the snow surface without any gaps for skiers to slide under, [Plaintiff] would not have received the severe injuries he sustained . . . ." (*Id.* at 12.)

3. Okemo "created a hazardous condition by placing snow making equipment in the center of beginner skiing terrain" and "the failure of [Okemo] to . . . remove the snowmaking stations from between the Open Slope and Lower Mountain Road trails, . . . was/were the cause(s) of [Plaintiff's] injuries." (*Id.* at 12.)

## LEGAL STANDARD

In *Daubert v. Merrell Dow Pharms., Inc.*, the United States Supreme Court instructed federal district courts to perform a "gatekeeping role" to ensure that only evidence that is "based on scientifically valid principles" will be presented by an expert witness. 509 U.S. 579, 597 (1993). In performing this gatekeeping role, the district court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Zaremba v. Gen. Motors Corp.*, 360 F.3d 355, 358 (2d Cir. 2004). (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). The proponent of expert testimony has the burden of proving its admissibility. *See* Advisory Committee Notes, 2000 Amendments, Fed. R. Evid. 702 ("[T]he admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.").

**ARGUMENT**

I. **PENNIMAN'S OPINION THAT PLAINTIFF'S INJURY WAS NOT CAUSED BY AN INHERENT RISK OF SKIING UNDER 12 V.S.A. § 1037 IS INADMISSIBLE**

Plaintiff cannot recover if his injuries were the result of an "obvious and necessary" risk that is inherent to the sport of skiing. 12 V.S.A. § 1037; *Nelson v. Snowridge, Inc.*, 818 F. Supp. 80, 84 (D. Vt. 1993) (granting summary judgment for ski area where the plaintiff slipped on an icy ski slope and slid into a tree). Mr. Penniman opines that the cause of Plaintiff's injury—losing control and sliding into a fixed and padded snowmaking tower on the side of the trail—is "not inherent to the sport of skiing." (Ex. B at 12; Ex. C at 114:23-25.)

    A. **Penniman's Inherent Risk Opinion is an Impermissible Legal Conclusion**

The Second Circuit "is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion." *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992). Although "an opinion . . . is not objectionable just because it embraces an ultimate issue," Fed. R. Evid. 704, an expert opinion that states a legal conclusion or "communicat[es] a legal standard—explicit or implicit—to the jury" is inadmissible. *Hygh*, 961 F.2d at 364. Legal conclusions disguised as expert testimony are inadmissible because they usurp the function of the court as well as the role of the jury in determining whether the plaintiff has proved his or her case. *Marx & Co., Inc. v. Diners' Club Inc.*, 550 F.2d 505, 509-512 (2d Cir. 1977) ("It is not for witnesses to instruct the jury as to applicable principles of law, but for the judge. . . . The danger is that the jury may think that the 'expert' in the particular branch of the law knows more than the judge—surely an inadmissible inference in our system of law."); *Gordon v. New England Cent. R.R., Inc.,* No. 2:17-CV-00154, 2019 WL 4068639, at *3 (D. Vt. Aug. 28, 2019) (excluding "testimony [that] will 'usurp either the role of the trial judge in instructing the jury as

4

to the applicable law or the role of the jury in applying that law to the facts before it'") (quoting *United States v. Lumpkin*, 192 F.3d 280 (2d Cir. 1999)).

> **B.    Even if Penniman's Opinion Were Not a "Legal" One, It is Still Inadmissible Under Rule 702 for a Variety of Additional Reasons**

First, Mr. Penniman's opinion is conclusory and lacks any methodology or basis. It relies on a dictionary definition of "inherent," (Ex. B at 8), and Mr. Penniman's personal view of whether the facts of this case meet that definition, (*id.*), as well as what he has "heard" about inherent risks. (Ex. C at 190:11-20.) This is not an adequate basis for an expert opinion.

Mr. Penniman also states that "when a padding device is placed on an object, the customer rightly assumes that the device will serve the function it appears to serve. Installing a device that looks like a pad, but does not serve that function is clearly deceptive creating a false impression and a false sense of security." (Ex. B at 9.)[1] But Mr. Penniman isn't qualified to talk about "customer assumptions," and this "opinion" requires no specialized knowledge and rests on no valid basis. *See Moltner v. Starbucks Coffee Co.*, 399 F. App'x 630, 632 (2d Cir. 2010) (affirming exclusion of expert testimony that is "devoid of any factual or analytical basis," lacks "a sufficient level of intellectual rigor," and "does not state the basis or analysis from which its conclusions are derived"); *Rieger v. Orlor, Inc.*, 427 F. Supp. 2d 99, 104 (D. Conn. 2006)

---

[1] Mr. Penniman also refers to "studies in human behavior." (Ex. B at 10.) He only cites one such report, opining that "while a skier may be aware of a lift tower in the middle of a trail, he or she is not likely to be aware of the sharp edges of the steel access ladder installed on the uphill side of the tower or of the sharp anchor bolts sticking up from the base. Likewise, snowmaking standpipes and what they are made of, especially when they appear to be adequately protected simply are not on the radar of most customers." (*Id.*) He then leaps to this conclusion: "For these reasons, adding unnecessary additional risks of such man-made objects to beginner and lower skill-level trails and slopes was widely viewed as unacceptable in the North American mountain resort industry prior to and in 2019." (*Id.*) This opinion must also be excluded. Mr. Penniman has no expertise in the field of "human behavior" from which he could reliably explain the findings of studies in that field, most of which he does not bother to identify. To the extent he relies on his own experience in the mountain resort industry, he provides no explanation of that experience. *See DiFrancesco*, 2017 WL 1046741, at *14.

(excluding an expert opinion that "does not proffer any specialized knowledge and invokes legal standards" because it "attempts to substitute [the expert's] judgment for the jury's"); *In re Rezulin Products Liability Litigation*, 309 F. Supp. 2d 531, 544 (S.D.N.Y. 2004) (permitting "experts to tender purely subjective views in the guise of expert opinions. . . . would border on the absurd").

Additionally, Mr. Penniman's opinion is not helpful to the jury, since he seems to just be arguing facts rather than providing true expert opinions. The jury is capable of making its own determination of fact issues. *See, e.g.*, *DiFrancesco*, 2017 WL 1046741, at *12 (excluding Penniman's "inherent risk" opinion because determination of that legal issue "does not require an expert opinion one way or the other"); *Lipton v. Mountain Creek Resort*, Inc., Civ. No. 134866KMMAH, 2019 WL 4597205, at *7 (D.N.J. Sept. 23, 2019) (same, and stating: "To begin with, interpretation of the meaning of the ski statute itself would not be a proper subject of expert testimony in any event. The meaning of terms in a statute or regulation or the application of such terms to specified conduct are not subjects for expert opinion or testimony."). An expert could, if properly qualified and with adequate basis, opine as to things such as the standard in the industry, what is common practice in Vermont or the region, and whether reasonable alternatives existed. That, however, is not the opinion Mr. Penniman seeks to offer.

Finally, the risk of unfair prejudice from the jury taking legal direction from an expert substantially outweighs any de minimus probative value of Mr. Penniman's opinion. *See Untied States v. Scop*, 846 F.2d 136, 140 (2d. Cir. 1988) ("In essence, [the expert's] opinions were legal conclusions that were highly prejudicial and went well beyond his province as an expert. . . . Moreover, because his opinions were calculated to 'invade the province of the court to determine

6

the applicable law and to instruct the jury as to that law, they could not have been helpful to the jury in carrying out its legitimate functions." (citations omitted)).

## II. PENNIMAN'S OPINIONS ABOUT WHAT HAPPENED AND WHAT CAUSED PLAINTIFF'S INJURIES ARE INADMISSIBLE

### A. Penniman's Opinion that Plaintiff "Slid Under the Shield as He Collided Directly with the Steel Stand-Pipe" is Not Proper Expert Testimony

Mr. Penniman opines that "[t]here was also a gap between the snow surface and the bottom of the shield at the time of [Plaintiff's] collision with the stand-pipe. The shield fell off when [Plaintiff] slid under the shield as he collided directly with the steel stand-pipe." (Ex. B at 3.) Mr. Penniman's description of what occurred at the time of the incident is not "expert" testimony because it was not formulated based on "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702; *Daubert*, 509 U.S. at 592 ("The subject of an expert's testimony must be scientific . . . knowledge. The adjective 'scientific' implies a grounding in the methods and procedures of science."). It is speculation or, at best, merely lay testimony about facts of which Mr. Penniman has no personal knowledge. If a witness's testimony is "not based on scientific, technical, or other specialized knowledge," as here, it is only admissible if it is "(a) rationally based on the witness's perception [and] (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue." Fed. R. Evid. 701.

Mr. Penniman was not present at the time of the incident. His speculation regarding what may have occurred is not based on personal knowledge or otherwise helpful in determining a fact in issue, and is therefore inadmissible. Fed. R. Evid. 602; *LaSalle Bank Nat. Ass'n v. CIBC Inc.*, No. 08 Civ. 8426 WHP HBP, 2012 WL 466785, at *7 (S.D.N.Y. Feb. 14 2012) ("an expert may not testify as to facts not within his personal knowledge.").[2] Without any firsthand knowledge,

---

[2] What's worse, Mr. Penniman admitted that his "opinion" is not supported by any evidence. (Ex. C at 97:8-25 ("Q: But I thought you had the opinion that Grajeda slid under the pad? A: It's

7

Mr. Penniman is merely regurgitating Plaintiff's (speculative) version of events, which makes it unhelpful to the jury. *See Arista Records LLC*, 608 F. Supp. 2d at 424 ("An expert who simply regurgitates what a party has told him provides no assistance to the trier of fact through the application of specialized knowledge.").

### B. Penniman is Not Qualified to Opine on the Cause of Plaintiff's Injury

Mr. Penniman's opinion that Plaintiff's injuries were caused by his collision with the "pipe" as opposed to the padded shield is inadmissible because he has no "scientific, technical, or other specialized knowledge that will help the trier of fact to understand" the mechanism of Plaintiff's injury. Fed. R. Evid. 702(a).

Mr. Penniman is a retired ski patroller. (Ex. A.) He has a bachelor's degree in economics and "continuing education" in "EMT/Meteorology/Geology/Spanish," "instructional Processes in Vocational Education," "Calculus I & II," and "Differential Equations." (*Id.*) He has certifications in ski instruction, avalanche safety, and ski patrolling. (*Id.*) For the past forty years, Mr. Penniman has served as a "consultant." (*Id.*) He is not a biomechanical engineer. (Ex. C at 264:21-23.) He has not examined Plaintiff. He has no credentials that would allow him to reliably testify regarding Plaintiff's medical condition, or what Plaintiff's medical condition would be if Plaintiff's mechanism of injury had been different. (*See, e.g.*, *id.* at 176:22-177:5 ("I don't have a degree, but I have a pretty good idea what causes serious injuries.")). Mr. Penniman

---

not my opinion. That's the evidence. Q: Okay. All of the evidence?  A: … [N]o, not all of the evidence. . . . Q: So let me ask you this, Mr. Penniman: Are you aware of any sworn testimony of any witness who saw [Plaintiff] slide under the pad? A: No. There's no witness that said he slid under.").) So not only does Mr. Penniman have no personal knowledge of the facts he seeks to offer as "expert" opinions, there is no factual basis for them in the record. His "opinion" is inadmissible on this basis alone. *See Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 22 (2d Cir. 1996) (holding that an expert opinion "without factual basis . . . should not have been admitted").

cannot opine as to the impact forces Plaintiff sustained, or how those forces would have been different had Plaintiff impacted the shield as opposed to the snowmaking equipment itself:

> Q: [Y]ou're not here presenting yourself as an expert to say, "Hey, you know what, I am qualified to say what the impact forces were on Mr. Grajeda at the point where he was injured?"
>
> A: That's correct.
>
> Q: And "I'm not here to say that if this Gilman product [the shield] was properly installed, the impact forces would be 'x' amount less than that." Not here to say that either?
>
> A: Correct.
>
> Q: And you're not here to say that "if those impact forces were that much less, he would have suffered zero injury." You're not here to say that?
>
> A: That's correct.

(Ex. C at 177:6-19.) Instead, Mr. Penniman bases his causation opinion solely on "what [he has] read in terms of [Plaintiff's] behavior that day" and "the history that [he has] of the Gilman shields." (*Id.* at 197:20-198:3.) From that background alone, Mr. Penniman opines that a "high probability of no serious injury is the result. . . . [T]he body position when he hits anything can cause minor injuries. You might have a finger bent back or bump his head and have a headache, whatever. But he's not going to suffer any serious injury. At least historically that is the evidence I have." (*Id.* at 197:20-199:5.)

Mr. Penniman is not an expert in biomechanics or medicine, such that he could provide any qualified expert opinion regarding what injuries Plaintiff would have sustained had he impacted the padded shield as opposed to the snowmaking equipment itself. While an expert need not be a biomechanical engineer in order to be qualified to render a causation opinion, the expert must have some "knowledge, skill, experience, training, or education," Fed. R. Evid. 702, in deriving the specific cause of the injury at issue. Mr. Penniman does not have any such thing.

9

The fact that Mr. Penniman has read a study about how the shields at issue here generally reduce crash forces (*see* Ex. C at 265:8-271:1 ("I haven't looked at it critically for quite a while but, yeah. . . . I haven't looked at the study in a long time."), does not qualify him to opine that Plaintiff could not have sustained his injuries by impacting the shield. *E.g.*, *Topliff v. Wal-Mart Stores E. LP*, No. 6:04-CV-0297 GHL, 2007 WL 911891, at *11-12 (N.D.N.Y. Mar. 22, 2007) (rejecting an expert's conclusory assertions of expertise and finding his passing reference to literature insufficient to qualify him as an expert).

   **C.** **Penniman's Opinion that Plaintiff Must Have Hit the "Pipe" Because Hitting the Pad Could Not Have Caused His Injury is Unreliable Speculation**

Mr. Penniman's opinion is also inadmissible because it does not "rest on a reliable foundation," and is therefore not "relevant to the task at hand." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (citing Fed. R. Evid. 702). An expert causation opinion must be based on a reliable methodology, *Blanchard v. Eli Lilly & Co.*, 207 F. Supp. 2d 308, 316 (D. Vt. 2002), and the expert's theory must have "adequately accounted for obvious alternative explanations." *Blanchard*, 207 F. Supp. 2d at 316. Mr. Penniman's causation opinion fails both criteria: he employed no methodology and ignored obvious alternative explanations.

Plaintiff's injury was caused by one of two things: he either collided with the metal pole or the padded shield covering the pole. Mr. Penniman opines—without explanation, data, testing, or analysis—that Plaintiff's injury was "caused" by his collision with the snowmaking "pipe." (*E.g.*, Ex. B at 4.) But rather than use a methodology, he simply assumes, based on the fact that *someone else* had never heard of an incident in which a skier was seriously injured by collision with a shield—that Plaintiff could not have sustained his injuries from impact with the shield:

> To date, no known or documented information has been forthcoming from any source to suggest that there has ever been a serious, life altering injury to any

10

> person impacting a properly installed and configured Gilman TS-2 shield. Indeed, Elizabeth Gilman testified at her deposition on February 25, 2021 that she is not aware of any skier having ever sustained a serious injury when striking a properly installed Gilman Tower Shield product.

(Ex. B at 3-4.)[3] This is not a reliable methodology. It is an inference that any juror could make. *United States v. Cruz*, 981 F.2d 659, 664 (2d Cir. 1992) (expert testimony must be "beyond the ken of the jury" and "cannot be used solely to bolster the credibility" of one party "by mirroring their version of the events").

Additionally, Mr. Penniman's opinion that collision with a padded shield is generally safer than collision with an unpadded piece of metal snowmaking equipment is not "the product of reliable principles and methods" either. Fed. R. Evid. 702. The Court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Amorgianos*, 303 F.3d at 265-266. Mr. Penniman has not done so, and his opinion should be excluded. *See Leavitt v. Ethicon, Inc.*, No. 2:20-CV-00176, 2021 WL 3674067, at *4 (D. Vt. Aug. 19, 2021) (excluding expert opinion because the expert "provides no basis" for the opinion and failed to identify the "facts or data" on which he relied or explain how his opinion "is the product or reliable principles and methods"); *Est. of Puppolo v. Welch*, No. 5:14-CV-95, 2017 WL 4042342, at *15 (D. Vt. Sept. 12, 2017), *aff'd sub nom. Puppolo v. Welch*,

---

[3] *See also* Ex. C at 31:18-23 "Q: Oh, you have evidence of actual cases where racers and other people have hit these pads and walked away? A: Richard Gilman does. Q: Okay, but do you have them? A: No, I'm taking his word."); *see also id.* at 30:19-31:2 (explaining that the only incident Mr. Penniman is aware of in which a skier collided with a shield is based on a conversation he had with a ski area employee who "commented to [Mr. Penniman] that he was surprised at how much it hurt, but that he was able to stand up and walk away."); *id.* at 36:13-20 ("I have put it out there that I'd like to hear about any accident—any serious injury resulting from a properly installed and configured Gilman shield. I've asked the Gilman Corporation. They've not heard of one. I've asked you guys, the [defense attorneys]. You guys haven't told me of any. All I can assume at this point is if there are any, they're few and far between. If there are any and all.").)

11

771 F. App'x 64 (2d Cir. 2019) (excluding expert opinions that were "conclusory in nature and do not account for countervailing facts").

This would not be the first time a court excluded Mr. Penniman's causation opinion as unreliable. *See, e.g.*, *Spearly v. Ayer*, No. CIV. 08–417–B–H, 2009 WL 4544982, at *1 (D. Me. Nov. 30, 2009) (excluding Mr. Penniman's opinions that "the defendant bears full responsibility for the collision … and [the plaintiff's] subsequent injuries" because such conclusory opinions "go too far"); *see also Brunsting v. Lutsen Mountains Corp.*, No. 07-43192, 2008 WL 5432266, at *2 n.4 (D. Minn. Dec. 30, 2008) ("[T]he Court questions the admissibility of [Mr.] Penniman's opinion regarding the stump . . . because it appears to be "unsupported speculation" and therefore has no "evidentiary relevance and reliability.") (overruled on other grounds).

### D. The Danger of Unfair Prejudice from Penniman's Causation Opinion Substantially Outweighs any Probative Value

There is no probative value from Mr. Penniman's speculative causation opinion. *United States v. Napout*, 963 F.3d 163, 186 (2d Cir. 2020) (concluding that speculative evidence carries "extremely low probative value"). But allowing a speculative "say so" opinion will be extremely prejudicial to Okemo. *See Doe v. Hartford School District*, No. 2:16-cv-00206, 2018 WL 1064572, *6 (D. Vt. Feb. 26, 2018) (excluding expert testimony as unfairly prejudicial because it would "have the potential to confuse and mislead the jury as to the role of an expert witness, the limits of his or her knowledge, and interpose the risk that a jury would find such opinions by a well-qualified expert . . . conclusive"). And the fundamental unreliability of Mr. Penniman's causation opinion cannot be cured on cross examination. *See, e.g.*, *State v. Michaels*, 625 A.2d 489, 502 (N.J. Super. Ct. App. Div. 1993) (concluding that "no amount of cross-examination could have undone the harm caused" by unreliable expert testimony).

## III. PENNIMAN'S OPINION THAT THE POSITIONING OF OKEMO'S SNOWMAKING EQUIPMENT WAS "UNREASONABLE" IS INADMISSIBLE

### A. Penniman is Not Qualified to Offer Expert Opinions Regarding Whether The Positioning of Okemo's Snowmaking Equipment is Reasonable

Mr. Penniman has no "specialized knowledge," Fed. R. Evid. 702, that will help the jury decide whether the design of Okemo's snowmaking system is reasonable. Mr. Penniman is an avalanche safety consultant. (*E.g.*, Ex. C at 13:19-22; Ex. A at 2.) His only experience working for a ski resort consists of: (1) a handful of seasons as a ski patroller in the 1970s, shortly after which he began litigation consulting, (*id.* at 25:5-20), and (2) a single season as the ski patrol director for a small ski area in Wyoming fifteen years ago, (*id.* at 14:10-22). Mr. Penniman's ski patrol experience does not give him "specialized knowledge" regarding the design of a snowmaking system. This is particularly true considering the snowmaking system at the Wyoming resort where Mr. Penniman spent a single season has just one snowmaking gun:

> Q: So you didn't have . . . to figure out a layout and a plan and a protection plan for the beginner terrain at White Pine as it related to permanent snow-making installations?
>
> A: Correct.

(Ex. C at 38:8-14.). Okemo's snowmaking system is comprised of more than 1,000 snowmaking guns. Mr. Penniman has no experience with designing the layout of such a system. His opinions on this score are therefore inadmissible. *See Simuro v. Shedd*, No. 2:13-CV-00030, 2016 WL 9526418, at *3 (D. Vt. Nov. 9, 2016) (finding expert not qualified because he did not "have significant experience working specifically" with the issue involved in the case).

### B. Penniman's Opinion Regarding the Positioning of Okemo's Snowmaking Equipment is Unreliable

Mr. Penniman opines that Okemo was unreasonable for placing the snowmaking equipment between the trail on which Plaintiff was skiing, Lower Mountain Road, and an

13

adjoining trail, Open Slope. (Ex. B at 10.) In Mr. Penniman's opinion, Okemo should have removed "the snowmaking stations from the center of the trails [by] moving them out of harm's way to the treed sides of the trails." (*Id.*) In opining that Okemo was unreasonable for placing snowmaking equipment on one side of the trail, as opposed to the other, Mr. Penniman states that "it is widely accepted in the North American mountain resort industry (and is common sense) that creating man-made structures in the fall line of beginner and lower skill-level trails and slopes should be avoided unless there is a substantially level or low angle slope far enough above the structure to allow out-of-control or sliding customers to slow to a near stop before reaching fixed objects." (*Id.* at 7-8.)

But Mr. Penniman does not explain why moving the subject snowmaking equipment to the "sides of the trails" would have been reasonable or even possible (or why the equipment wouldn't pose the same danger on the other side of the trail). He does not cite to any literature. He does not cite to his own experience. He does not even identify other ski resorts that employ the approach for which he advocates. He cites instead to "common sense." (*Id.* at 8.) But "common sense" is not a reliable expert methodology. *See, e.g., Wiener v. AXA Equitable Life Ins. Co.*, No. 16 Civ. 04019 (ER), 2019 WL 1228074, at *9 (S.D.N.Y. Mar. 15, 2019) ("Courts within this Circuit have routinely excluded expert testimony when the testimony was based on nothing more than experience and common sense.").

Mr. Penniman's opinion also relies on the abstract notion of a "safety hierarchy," which provides that hazards should be eliminated or protected with safeguarding technology. (Ex. B at 5.) Mr. Penniman's reference to a generic "safety hierarchy," however, is not a sufficient basis for his opinion. *See Kellogg v. Wyeth*, No. 2:07–CV–82, 2012 WL 2970621, at *5 (D. Vt. July 20, 2012) (holding that "cursory reference to the sources of [an expert's] opinion do not enable

the [c]ourt to determine that" the expert's opinions are "based on sufficient facts or data."). The "safety hierarchy" explicitly recognizes that some hazards cannot be eliminated, and Mr. Penniman himself recognizes that placing the snowmaking equipment elsewhere may not be practical or even possible. (Ex. B at 5; Ex. C at 38:15-23 ("[I]f there's no alternative and there's no other option, there's no way to get these things off the beginner trail, then they have to be adequately protected").) He also opines that the shielding Okemo used is "the best there is." (Ex. C at 91:14-16.) Mr. Penniman offers no reason—let alone "facts or data," Fed. R. Evid. 702(b)—why Okemo's placement of the snowmaking tower at issue here was inconsistent with the "safety hierarchy." The opinion should be excluded. *See Vale v. United States*, 673 F. App'x 114, 116 (2d Cir. 2016) (holding that expert testimony is "inadmissible as unreliable where it consists of conclusory and speculative opinions" regarding the defendant's negligence).

### C. The Danger of Unfair Prejudice from Penniman's Opinion Regarding the Positioning of Okemo's Snowmaking Equipment Substantially Outweighs its Probative Value

The probative value from Mr. Penniman's opinion is minimal, and admitting speculative and conclusory expert opinions on a primary factual dispute will inherently prejudice Okemo. *See Flebotte v. Dow Jones & Co.*, Inc., Civ.A. 97-30117-FHF, 2000 WL 35538296, at *6 (D. Mass. Dec. 22, 2000) ("Of course, permitting an expert to testify as to such wildly speculative opinions would invariably prejudice his opponent."). His opinion should thus be excluded under Rule 403 as well.

### **CONCLUSION**

Okemo respectfully requests that the Court exclude Mr. Penniman's "expert" opinions regarding (1) whether Plaintiff's injury was the result of an "inherent risk" of skiing; (2) what Plaintiff struck and the specific cause of Plaintiff's injury; and (3) whether Okemo was unreasonable for placing snowmaking equipment between two ski trails.

Date: June 1, 2022                                  Respectfully submitted,

.                                                   */s/  Kristen L. Ferries*
                                                    Craig R. May (*pro hac vice*)
                                                    Habib Nasrullah (*pro hav vice*)
                                                    Kristen L. Ferries (*pro hac vice*)
                                                    Wheeler Trigg O'Donnell LLP
                                                    370 Seventeenth Street, Suite 4500
                                                    Denver, CO  80202-5647
                                                    Telephone:   303.244.1800
                                                    Facsimile:   303.244.1879
                                                    Email:   may@wtotrial.com
                                                             ferries@wtotrial.com

                                                    Thomas P. Aicher, Esq.
                                                    Cleary Shahi & Aicher, P.C.
                                                    110 Merchants Row, P.O. Box 6740
                                                    Rutland, VT 05702-6740
                                                    Telephone:    802.775.8800
                                                    Facsimile:    802.775.8809
                                                    Email:   tpa@clearyshahi.com

                                                    *Attorneys for Defendants Vail Resorts Inc.,*
                                                    *Vail Management Company, And Okemo Limited*
                                                    *Liability Company D/B/A Okemo Mountain Resort*

## CERTIFICATE OF SERVICE

      I hereby certify that on June 1, 2022, I electronically filed the attached document using the ECF System for filing; it is available for viewing and downloading from the ECF system. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

- **Andrew J. Smiley**
  asmiley@smileylaw.com

- **Guy I. Smiley**
  gsmiley@smileylaw.com

- **Matthew D. Anderson**
  mda@vermontcounsel.com

                                      */s/Kim M. Creasey*
                                      Kim M. Creasey