UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT
-----------------------------------------------------------------------x
RICHARD GRAJEDA, III,                                                          2:20-cv-00165

                                                                                                                                         (Reiss, J.)

                                        Plaintiff,

          -against-

VAIL RESORTS INC., VAIL RESORTS MANAGEMENT
COMPANY, and OKEMO LIMITED LIABILITY COMPANY
 d/b/a OKEMO MOUNTAIN RESORT,

                                   Defendants.
-----------------------------------------------------------------------x

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
TO LIMIT THE TESTIMONY OF PLAINTIFF'S EXPERT RICHARD PENNIMAN
AND MEMORANDUM IN SUPPORT**

      Plaintiff, RICHARD GRAJEDA, III (hereinafter "Ric"), opposes the Defendants' Motion to limit the testimony of plaintiff's ski safety expert, Richard Penniman. Mr. Penniman is an experienced ski safety expert who is well-qualified to offer opinions about the defendants' failures to comply with safe ski industry practices by placing a snowmaking station in the middle of beginner skier terrain and then failing to properly protect skiers from sustaining catastrophic injuries upon colliding with the snowmaking station placed in their way. Mr. Penniman's opinions are crucial to the jury's assessment in evaluating the defendants' liability and in determining whether sustaining a catastrophic injury from colliding with a 30-year-old steel snowmaking station in the middle of a beginner trail is an inherent risk of skiing at Okemo. Mr. Penniman's opinions comply with Federal Rule of Evidence 702 and are not unfairly prejudicial to the defendants. The motion should be denied.

1

## SUMMARY

On December 19, 2019, Ric was a beginner skier, skiing his second run of the day on a beginner trail at Okemo Mountain when a tragedy occurred. He was skiing in a "snow-plow" down a beginner trail called "Open Slope," when he slipped on a patch of ice, fell, and started to slide down the slope. However, instead of sliding until he came to rest, Ric collided with a steel snowmaking pole that was placed in the middle of the trail, along the "fall line" due to the force of gravity. The steel pole used to support the snowmaking equipment was not properly safeguarded, in that the padding in front of it, known as a "Gilman Tower Shield" was elevated off the snow, leaving a gap large enough for Ric's body to slide under it. Instead of hitting the padding, which is designed to absorb the impact and rebound skiers away from the steel pole, Ric slid directly into the bare pole, sustaining multiple injuries including a fracture of his spinal column and a severing of his spinal cord rendering him paraplegic.

The evidence herein clearly establishes that the steel snowmaking pole was placed approximately 30 years ago and was never removed or moved off the ski trail despite changes in technology in the last several decades that allows snowmaking from the sides of the trail or by way of portable snowmaking devices that can be moved off the ski trail when not in use. The evidence has also established that prior to Ric's accident, skiers at Okemo had collided with the Gilman Tower Shield, which, when properly installed, prevented skiers from striking the exposed steel pole and effectively protected the skiers from sustaining any serious injury. The defendants' own guidelines, as well as testimony from Vail employees, confirm that the standard of care in the ski industry is to make sure there is no gap beneath the padding and the snow surface. Mr. Penniman has the experience and qualifications to explain to the jury why the steel snowmaking pole should not have been placed in the middle of a beginner ski trail; the importance of making sure the steel pole, if placed in the fall line of a beginner trail, must be properly protected to prevent skiers from sustaining catastrophic

injuries upon impacting it; and how Ric's tragic accident was not a result of any inherent risk in skiing.

## FACTUAL BACKGROUND

The defense would like this Court to believe that the snowmaking station[1] involved in the plaintiff's accident was "on the side of a ski trail," making the claim numerous times throughout their motion (See, Defense Memorandum, ECF Docket #88, pp.2,3,4,14). The reality is that the snowmaking station was in the middle of a beginner ski trail and not anywhere near the side of the ski trail. Here is a photograph taken by the defendants' own ski expert, Mark Petrozzi, which depicts the location of the involved snowmaking station in the middle of the trail:



(Exhibit 55, Mark Petrozzi deposition, February 17, 2022)

Mr. Petrozzi confirmed in his deposition that the snowmaking station was not on the side of the trail:

---

[1] The plaintiff uses the phrase "snowmaking station" to refer to the steel "HKD" brand snowmaking stanchion (stand) and tower boom involved in the plaintiff's accident.

> Q. *All right. So you would agree that the snowmaking station involved in Ric's accident wasn't trail side, right?*
>
> MR. AICHER: *Objection to the form.*
>
> A. *It's not trail side.*

(Exhibit "1," pp.389:23-390:3). Additionally, the defense improperly claims, without any citation to the evidence in this case, that the plaintiff was "skiing fast" and "lost control." There is no such evidence before this court to support these claims.

## ARGUMENT

### PLAINTIFF'S SKI SAFETY EXPERT, RICHARD PENNIMAN, IS WELL-QUALIFIED AND SHOULD BE PERMITTED TO OFFER THE OPINIONS CONTAINED IN HIS REPORT AT TRIAL

Federal Rule of Evidence 702, provides in pertinent part:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. *Fed. R. Evid. 702*

Rule 702 embodies a liberal standard of admissibility for expert opinions. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588-89 (1993). *United States v. Lawton*, 84 F. Supp. 3d 331, 338, 2015 U.S. Dist. LEXIS 2475. "The inquiry envisioned by Rule 702 is a flexible one," *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002), and the general thrust of the Rules is to favor admissibility of expert opinion testimony, *Blanchard v. Eli Lilly & Co.*, 207 F. Supp. 2d 308, 316 (D. Vt. 2002).

1. **Mr. Penniman Has been Qualified as a Ski Safety Expert and his Opinions have been Permitted in Many United States District Courts**

Richard Penniman is an extremely well-qualified expert in ski safety and impact mitigation on ski terrain. Mr. Penniman has been deemed qualified as an expert in ski safety by numerous

4

courts, including the United States District Court – District of New Jersey, where the court permitted Mr. Penniman to offer the opinions that "there were no effective impact mitigation devices or systems up slope of the objects, nor any catch fences to prevent collisions with them" and that the defendant "failed to adequately warn of the sudden, blind drop-off and to protect skiers from potential impact with the obstacle(s) below on the Big Bear trail by using practical, reasonable, effective, and affordable padding, screening, and/or shielding technology," which "created an unnecessary unreasonable, and unsafe condition" that ultimately resulted in Plaintiffs' injuries. *Lipton v. Mt. Creek Resort, Inc.*, 2019 U.S. Dist. LEXIS 161875. In *Lipton*, the Court held that "Mr. Penniman will be permitted to offer opinions, including opinions on industry standards of care and safety standards. I find that this testimony will assist the jury in assessing the underlying conduct of the parties in this action as this conduct relates to liability." *Id.*

Similarly, in the United States District Court -Western District of New York, the Court held that *"As* a threshold matter, Penniman's expert testimony comes from decades of performing various tasks at several ski resorts and evaluating skiing hazards*." DiFrancesco v. Win-Sum Ski Corp.,* 2017 U.S. Dist. LEXIS 39695.

In the United States District Court – District of Washington, the Court held that Mr. Penniman possessed the "skills, knowledge and experience regarding ski area operations to testify about chair lift operations and safety nets" required by Fed. R. Evid. 702 and that "His specialized knowledge about ski area operations will be helpful to the jury in understanding the evidence; it is based on sufficient data — forty years of experience as a lift attendant, ski patroller, mountain manager, trainer and professor; and it is the product of reliable principles and methods applied to the facts of this case — in this case, comparing his observations regarding the standard of care in the industry garnered from years of experience to the facts of this case*." Whitford v. Mt. Baker Ski Area, Inc*., 2012 U.S. Dist. LEXIS 40166. See also, *Passero v. Killington, Ltd*., 1994 U.S. Dist. LEXIS 8984 (E.D. Pa.

1994), *infra,* (Mr. Penniman deemed a "ski area" expert and permitted to opine on an "unnecessary hazard which should have been marked by the Killington ski patrol and then removed from the 'beginner' trail*"*).

As documented in his *curriculum vitae* (annexed hereto as Exhibit "2"), Mr. Penniman has over 40 years of expertise in the ski industry, having held positions including, *inter alia*, Ski Patrol Director for Sugar Bowl Ski Corporation (Norden, CA) where he directed all ski patrol, snow safety operations, training, hazard evaluation and trail design, and as Ski Patrol Director for White Pine Ski Resort (Pinedale, WY) where he directed ski patrol operations and training and oversaw hazard evaluation, trail grooming and trail design. *Id*.

Since 1983, Mr. Penniman has been a consultant to the ski industry, and has been qualified as an expert on, *inter alia*, slope design, snowmaking and impact mitigation in numerous state and federal courts across the United States. *Id*. He is a member of numerous ski organizations and has lectured extensively on the topic of ski safety. *Id*. Mr. Penniman has served as an Adjunct Instructor at Sierra Nevada College where he taught Ski Area Mountain Operations and Safety for nine (9) years. *Id.*

Mr. Penniman has published numerous peer-reviewed articles on ski safety including "*Customs and Practices at U.S. Ski Areas for Mitigating Common Hazards through Trail Configuration and Maintenance*"; Skiing Trauma and Safety, Twelfth International Symposium, STP 1345 (1999); "*Standard Methods and Materials for Mitigating Injuries from Impact with Fixed Obstacles at U.S. Ski Areas*"; Skiing Trauma and Safety, Tenth International Symposium, STP 1266 (1996); and "*The Custom and Practice for Identification and Mitigation of Common Hazards at U.S. Ski Areas An Opportunity for Standards*"; Skiing Trauma and Safety, Ninth International Symposium, STP 1182 (1993). *Id.*

Accordingly, Mr. Penniman is qualified to offer his opinions that the defendants failed to comply with safe ski industry practices in (1) improperly placing and maintaining a 30-year-old steel snowmaking station in the middle of beginner skier terrain and (2) failing to properly protect skiers from sustaining serious injuries when colliding with the snowmaking station. As a result of his extensive experience and knowledge, Mr. Penniman is also qualified to opine that, but for the defendants' failures herein, the plaintiff would not have struck an unprotected steel pole in his path and been rendered paraplegic.

### 2. Mr. Penniman's Opinion That Placing and Maintaining an Improperly Padded Snowmaking Station in the Middle of Beginner Skier Terrain is Not an Inherent Risk of Skiing is Not a "Legal Conclusion"

The defense argument that Mr. Penniman's opinion is a "legal conclusion" is without merit. It is completely appropriate for a ski safety expert to opine on whether an accident-causing condition is an obvious or necessary hazard inherent to skiing. In *Passero*, *supra*, in affirming a multi-million-dollar jury verdict in favor of the plaintiff, the Court (applying Vermont law) held that the verdict was properly supported by Mr. Penniman's testimony that the mound of snow which caused the plaintiff's injury was "an unnecessary hazard which should have been marked by the Killington ski patrol and then removed from the 'beginner' trail." *Passero v. Killington, Ltd.*, 1994 U.S. Dist. LEXIS 8984 (E.D. Pa. 1994). The court held that Mr. Penniman's testimony, in addition to the testimony of Killington witnesses who had noticed the mound of snow before the accident, "was sufficient to create a jury question about whether the mound of snow was a 'necessary' danger 'inherent' to the sport of skiing, or whether Killington breached its duty to Passero 'to warn of or correct dangers which in the exercise of reasonable prudence in the circumstances could have been foreseen and corrected." *Id.*

Similarly*,* in *Umali v. Mount Snow*, Ltd., 247 F. Supp. 2d 567, 575, Senior District Judge Sessions, in denying summary judgment to the defendant, held that "Whether a risk is inherent,

7

obvious and necessary to a sport is ordinarily an issue appropriate for a jury" and that "Umali has proffered expert testimony that the dangerous condition of the track and jump was neither an obvious risk nor a necessary one." *Id*. (citing to *Dillworth v. Gambardella*, 970 F.2d 1113, 1117-18 (2d Cir. 1992). The law is clear that in cases involving the Vermont Sports Injury Statute (*Vt. Stat. Ann. tit. 12, § 1037*) an expert is permitted to testify that a condition was not an obvious or necessary risk inherent in a sport, so that a jury may consider the testimony in rendering its verdict. Accordingly, Mr. Penniman must be permitted to offer his opinions, as set forth in his report (Annexed to Defense Motion as Exhibit "B," ECF Docket #88-3) that an improperly placed and improperly padded snowmaking station in the center of a beginner ski trail is not an obvious or necessary risk inherent to the sport of skiing.

Additionally, Mr. Penniman is well-qualified to testify that the defendants should not have placed a steel snowmaking station in the middle of beginner ski terrain and that snowmaking equipment should be placed on the treed sides of beginner ski terrain. As set forth *supra*, Mr. Penniman has extensive experience in hazard identification, impact mitigation, trail design and snowmaking. In addition to his extensive first-hand experience, Mr. Penniman cites to peer-reviewed literature in his report which support his opinions, including *Safety Hierarchy, Barnett and Brickman*, Journal of Safety Research 1986 and *Skiing Trauma and Safety*, Twelfth Volume (1999). *Id.* at pp.5,10. Mr. Penniman also cites to standards set forth by the Committee of the American Society for Testing and Materials (ASTM) and the Ski Safety Committee of the National Ski Areas Association (NSAA). *Id.* at p.6.

Furthermore, given his extensive expertise in trail design, hazard identification and impact mitigation, Mr. Penniman is well qualified to testify that "when a padding device is placed on an object, the customer rightly assumes that the device will serve the function it appears to serve.

Installing a device that looks like a pad, but does not serve that function is clearly deceptive creating a false impression and a false sense of security." *Id*. at p.9.

In sum, Mr. Penniman's experience, training, and research qualify him to testify regarding placement of snowmaking stations, hazard identification, trail design and skier safety. Mr. Penniman's opinions are permissible, appropriate and will aid the jury.

### 3. Mr. Penniman Should be Permitted to Testify that the Plaintiff "Slid Under the Shield as he Collided Directly with the Steel Stand-Pipe"

It is common, and in fact required, to lay a foundation through an expert witness at the time of trial for a court and jury to learn what information the expert relied upon in forming the opinions being offered. "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." *Fed. R. Evid. 703*; *Reardon v. Manson*, 806 F.2d 39, 42 (2d Cir. 1986), cert. denied, 481 U.S. 1020, 95 L. Ed. 2d 509, 107 S. Ct. 1903 (1987) ("It is rare indeed that an expert can give an opinion without relying to some extent upon information furnished him by others."); See also, *Howard v. Walker*, 406 F.3d 114, 127 (2d Cir. 2005).

In his report, Mr. Penniman identifies the information he relies upon and the extensive amount of documents he reviewed in forming his opinions. (ECF Docket #88-3, pp.1-2). Mr. Penniman relies upon his site inspection, training, experience, review of twenty (20) witness deposition transcripts, discovery productions, investigation reports, photos and Vail's own padding guidelines. Mr. Penniman also relies upon his experience in researching, publishing, and teaching on the topic of Mitigating Injuries from Impacts with Fixed Obstacles at U.S. Ski Areas.

There is an overwhelming amount of evidence relied upon by Mr. Penniman which establishes that the plaintiff slid under the Gilman Padding and collided with the steel HKD

snowmaking stanchion. Deposition testimony reviewed by Mr. Penniman, including the testimony and/or statements of Ric Grajeda[2], David Villani[3], Kyle Cotter[4], Mike Morabito[5] and Elizabeth Gilman[6] all establish that Ric slid under the padding and hit the steel pole. Documentary evidence, such as the incident report and witness statement cards from the day of the accident also establish that Ric slid under the padding and into the steel pole.[7] There is additional evidence, including the plaintiff's own testimony, that the plaintiff immediately lost sensation to his legs upon impact with the steel pole. Accordingly, it is completely appropriate and permissible for Mr. Penniman to testify that his opinions are based upon the evidence he reviewed which establishes that the plaintiff was paralyzed as a result of sliding under the Gilman Tower Shield pad and hitting a steel pole.

---

[2] Ric Grajeda testified "*I slid down on my stomach, legs down facing up the mountain. As I was sliding, I felt a dip in the snow, and then I went under something, and I slammed into a metal pole or a steel pole*." (See, ECF Docket #85-7)

[3] David Villani arrived within 30 seconds of the accident and was told by bystanders that they observed "*Ric slide underneath the foam protection of the pole and hit into the metal pole itself on the ground.*" (See, ECF Docket #85-6). Plaintiff intends to offer this statement at the time of trial as an excited utterance exception to the hearsay rule. Furthermore, experts are generally permitted to rely on otherwise inadmissible evidence in formulating an expert opinion: "expert witnesses can testify to opinions based on hearsay or other inadmissible evidence if experts in the field reasonably rely on such evidence in forming their opinions." *United States v. Locascio*, 6 F.3d 924, 938 (2d Cir. 1993); *Howard v. Walker*, 406 F.3d 114, 127 (2d Cir. 2005).

[4] Kyle Cotter arrived at the accident scene immediately after Ric's impact and testified that he observed Ric "*underneath the blue foam padding*" and "*making a T with his body against the pole*" (See, ECF Docket # 85-8).

[5] The first Okemo/Vail ski patroller to arrive on the scene was Mike Morabito. Mr. Morabito testified that Ric was found "*face down up against the snow making stand*" which is a metal "*pipe*" of three to four inches in diameter. Mr. Morabito suspected that Ric had sustained a spinal injury based upon Ric's position against the post *("He was up against the post-and his body was-- like I said before a little angulated that way, he was definitely not straight")* (See, ECF Docket # 85-9).

[6] The President of Gilman Corporation testified *"if the individual were to hit the blue blanket where the cylinders are, it is designed to crumple to decelerate him to stop him from actually ending up hitting the metal object behind it. **It is impossible to get through the blanket and those two tower cylinders to get to that object***. (Exhibit "3," Gilman Transcript, p. 68, ***emphasis added***).

[7] Ric Grajeda and David Villani gave statements to ski patrol contemporaneous with the accident, and recorded in Okemo's incident report, that Ric "*went left and slid into a pole*" and David "*saw his friend face down wrapped around pipe*" (See, ECF Docket #85-5, pp. 29, 45-46).

10

The defense can question Mr. Penniman at trial as to their alternative interpretation of the evidence. *Howard v. Walker*, 406 F.3d 114, 127 (2d Cir. 2005) ("On cross-examination, an attorney is free to challenge an expert's methodology, her conclusions, and the bases for her conclusions. To the extent that the reliability of certain facts accepted by an expert is questionable, the exercise and process of cross-examination allow a defendant to bring any such factual disputes to the attention of the jury."). However, there is no legal precedent for preventing Mr. Penniman from testifying as to the facts he relies upon in forming his opinions.

### 4. Mr. Penniman is Qualified to Testify that the Defendant's Failures Were The Competent Producing Cause of the Plaintiff's injuries

Mr. Penniman is an expert on impact mitigation devices in the ski industry. As set forth, *supra*, he has been researching, publishing, teaching and lecturing on how ski areas can mitigate skier injuries from striking fixed objects, like the snowmaking station the plaintiff struck, for over 30 years.

In 1996, Mr. Penniman published a peer-reviewed article in a well-respected ski industry journal, entitled "*Standard Methods and Materials for Mitigating Injuries from Impact with Fixed Obstacles at U.S. Ski Areas*"; Skiing Trauma and Safety, Tenth International Symposium, STP 1266. Mr. Penniman has decades of experience evaluating various impact mitigation devices, such as the Gilman Tower Shield padding system, and their ability to eliminate or reduce serious injuries upon skier impact.

Mr. Penniman's knowledge and expertise in this area far surpasses the knowledge possessed by a lay person and is critical to helping the jury understand the effectiveness of a properly installed mitigation device. As Judge Sessions stated in *Sanders v. Nike, Inc.,* "A party is considered an expert in a field if he possesses 'knowledge, skills, experience, training or education' sufficient to educate the jury on that particular topic. Since the issue about which Halstead will testify partially involves a discussion of the extent to which protective sports equipment can prevent concussions, his practical experience in this field can educate the jury, and thus, he is qualified to give his opinion as to

11

causation." *Sanders v. Nike, Inc.*, 2004 U.S. Dist. LEXIS 30756 (citing *United States v. Brown,* 776 F.2d 397, 400 (2d Cir. 1985).

Similarly, Mr. Penniman's practical experience spending decades studying, teaching and publishing about the effectiveness of impact mitigation devices throughout the ski industry, will help educate the jury on how properly installed padding can eliminate the risk of a beginner skier sustaining paralyzing injuries from striking a solid steel pole placed in his path. Mr. Penniman's practical knowledge that in the last 30 years there has never been a report of a serious injury – and no reports of catastrophic or paralyzing injuries – from a skier impacting a properly installed Gilman Tower Shield makes him qualified to opine on causation.

Additionally, Mr. Penniman's opinion that the plaintiff would not have sustained paralyzing injuries but for the improper placement of the snowmaking station and improper padding of the snowmaking station, is supported by (1) the defendants' own accident records and testimony of Okemo's Ski Patrol Director that prior collisions with Gilman Tower Shields at Okemo failed to cause any significant injuries to the skiers involved and (2) Elizabeth Gilman's testimony that the Gilman Corporation has sold over one thousand Gilman Tower Shields to ski resorts since the late 1980s and is not aware of any skier having sustained an injury from colliding with a Tower Shield, no less a catastrophic injury like the one sustained by the plaintiff. (Exhibit "3," Gilman Transcript, pp. 56-57).

### 5. The Probative Value of Mr. Penniman's Opinions is Not Outweighed by the Danger of Unfair Prejudice

The defense claim that Mr. Penniman's opinions set forth herein would be unfairly prejudicial to the defendants is without merit. Mr. Penniman's opinions will aid the triers of fact and provide them with the information needed to render a just verdict. As set forth *supra*, Mr. Penniman has been permitted to offer opinions in ski industry safety in several district courts across the country without

resulting in any unfair prejudice to the defense. The defense has failed to establish any unfair prejudice that would overcome the probative value of admitting the opinions of Ric's ski safety expert herein.

## CONCLUSION

Richard Penniman is a well- qualified and very experienced ski safety expert who supports his opinions with evidence, real-world practical experience, research and published literature. His opinions are relevant, not unfairly prejudicial, and admissible pursuant to Federal Rule of Evidence 702. The defendants' motion should be denied in its entirety.

Dated: July 5, 2022

_____
Andrew J. Smiley, Esq.

SMILEY & SMILEY, LLP
122 East 42nd Street - 39th Floor
New York, New York 10168
(212)-986-2022
asmiley@smileylaw.com

Attorneys for Plaintiff
RICHARD GRAJEDA