UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

RICHARD GRAJEDA, )
)
Plaintiff, )
)
v. ) Case No. 2:20-cv-00165
)
VAIL RESORTS INC., VAIL RESORTS )
MANAGEMENT COMPANY, and OKEMO )
LIMITED LIABILITY COMPANY d/b/a/ )
OKEMO MOUNTAIN RESORT, )
)
Defendants. )

**ENTRY ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO LIMIT THE TESTIMONY OF PLAINTIFF'S EXPERT DR. JEFFREY PERRY**
(Doc. 87)

Plaintiff Richard Grajeda brings this negligence action against Vail Resorts Inc., Vail Resorts Management Company, and Okemo Limited Liability Company (collectively, "Defendants"), seeking damages for injuries he sustained in a ski accident at Okemo Mountain Resort ("Okemo"). Pending before the court is Defendants' June 1, 2022 motion to limit the testimony of Plaintiff's expert Jeffrey Perry, D.O. (Doc. 87.)

Plaintiff opposed Defendants' motion on July 5, 2022 (Doc. 97), and Defendants replied on July 19, 2022. (Doc. 100.) The court held a hearing on September 27, 2022, during which it ruled on the record that Dr. Perry's opinion may reflect that a collision with a snowmaking apparatus caused Plaintiff's injuries, as this fact is undisputed, but that he is not permitted to testify as to whether the injuries were caused by padded or unpadded equipment. Dr. Perry may refer to a "pole" when referencing documents containing that term but may not act as a hearsay conduit for eyewitnesses' reports. The court also ruled on the record that Dr. Perry may testify that Plaintiff's work-life expectancy will vary as he ages and that it is rare for someone with Plaintiff's level of

injury to exceed fifty percent of their work-life expectancy. He may not testify that Plaintiff's work-life expectancy as an international lawyer will be reduced by fifty percent due to his injury.

Plaintiff is represented by Andrew J. Smiley, Esq., Guy I. Smiley, Esq., and Matthew D. Anderson, Esq. Defendants are represented by Kristen L. Ferries, Esq., Craig R. May, Esq., Habib Nasrullah, Esq., Joel P. Iannuzzi, Esq., and Thomas P. Aicher, Esq.

### I. Factual and Procedural Background.

On December 19, 2019, Plaintiff fell while downhill skiing at Okemo on a beginner trail named "Open Slope." He alleges that he slid and collided with a snowmaking station at the center of the trail. Plaintiff suffered significant injuries and was rendered a paraplegic. On October 15, 2020, Plaintiff filed a complaint alleging a single cause of action for negligence against Defendants, whom he claims own, operate, maintain, and manage Okemo. Plaintiff claims Defendants inadequately padded the snowmaking station because the padding did not extend to the base of the station, allowing him to crash into the station's bare metal pole. He also asserts that Defendants negligently placed the snowmaking station in the center of the trail.

Dr. Perry reviewed Plaintiff's medical records, physically examined Plaintiff on March 21, 2021, and opined:

> It is my opinion to a reasonable degree of medical certainty, that Ric's sliding into a snow making pole at Okemo Mountain on December 19, 2019 was the competent producing cause of rendering him an ASIA C T9 paraplegic.
>
> It is further my opinion that the additional injuries sustained, as summarized in my report of March 21, 2021, were also caused when Ric slid into a snow making pole at Okemo Mountain on December 19, 2019.
>
> It is my opinion that the ongoing care and treatment he will require for the rest of his life is because of the injuries Ric Grajeda sustained when he collided with the snow making pole at Okemo Mountain on December 19, 2019.

(Doc. 87-4 at 2.)

Dr. Perry opined that Plaintiff's "dream of becoming an international lawyer will be compromised by a significantly shortened career. It is doubtful that he will be able to

work on a full[-]time basis, particularly considering [the] traveling that is involved and his 'work life expectancy' will be compromised by 50% or greater." (Doc. 87-3 at 5.)

## II. Conclusions of Law and Analysis.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 requires the court to serve as a gatekeeper for expert testimony, ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

An expert witness's testimony may be based on experience, but it may not be conclusory or speculative. *Major League Baseball Props., Inc. v. Salvino*, 542 F.3d 290, 311 (2d Cir. 2008) ("At trial, proffered 'expert testimony should be excluded if it is speculative or conjectural'; the '[a]dmission of expert testimony based on speculative assumptions is an abuse of discretion[.]'") (alteration in original) (internal citations omitted) (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21-22 (2d Cir. 1996)). "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Advisory Committee Notes, 2000 Amendments, Fed. R. Evid. 702.

### A. Dr. Perry's Causation Testimony.

Defendants seek to exclude Dr. Perry's opinion that Plaintiff's injuries were caused by an unpadded metal pole at the base of the snowmaking equipment. They argue that Dr. Perry is not qualified to opine on the mechanism of Plaintiff's injury and that his opinion is unreliable and would unfairly prejudice Defendants.

3

"[B]ecause a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields." *Nimely v. City of New York*, 414 F.3d 381, 399 n.13 (2d Cir. 2005). Dr. Perry is a medical professional experienced in providing care for individuals with spinal injuries. He does not have "superior knowledge, education, experience, or skill" that would qualify him to opine on whether Plaintiff's injury was caused by collision with a padded or bare metal pole, "the subject matter of the proffered testimony[.]" *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004).

Dr. Perry testified that he arrived at his causation opinion solely by reviewing Plaintiff's medical records. Based on the extent of Plaintiff's injuries and statements in the medical records, he "believe[s] that [Plaintiff] struck something that was not protected or was not protected properly." (Doc. 87-2 at 23.) He performed no other independent analysis or investigation. He draws on no biomedical expertise. His conclusion is nothing more than because Plaintiff's injuries are severe, it is more likely than not that he collided with an unprotected object. A jury could reach this same conclusion without an expert witness opinion.

An expert may not serve merely as a conduit for the hearsay testimony of another witness. *See Hutchinson v. Groskin*, 927 F.2d 722, 725 (2d Cir. 1991) (finding that counsel improperly used an expert "as a conduit for hearsay testimony"); *Mallatier v. Dooney & Bouke, Inc.*, 525 F. Supp. 2d 558, 664 (S.D.N.Y. 2007) ("[T]he expert witness must in the end be giving his *own* opinion. He cannot simply be a conduit for the opinion of an unproduced expert.") (emphasis in original). Because Dr. Perry's opinion that Plaintiff struck an unprotected pole "merely repeats or recasts the testimony of [fact witnesses] in order to arrive at a theory of causation, he is not testifying as an expert witness based upon specialized knowledge, but rather is acting as a conduit for another witness's testimony in the guise of an expert's opinion." *Rotman v. Progressive Ins. Co.*, 955 F. Supp. 2d 272, 283 (D. Vt. 2013). Under Rule 702, Dr. Perry may not provide a causation opinion about Plaintiff's injuries.

"Expert evidence can be both powerful and quite misleading because of the

4

difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (internal quotation marks omitted). The danger of unfair prejudice is heightened in this case where causation is hotly disputed.

The court therefore GRANTS IN PART and DENIES IN PART Defendants' motion to limit Dr. Perry's causation testimony. Dr. Perry may opine that a collision with a snowmaking apparatus caused Plaintiff's injuries, but he is not permitted to testify as to whether the injuries were caused by padded or unpadded equipment. He may refer to a "pole" when referencing documents containing that term but may not act as a conduit for other individuals' reports.

### B. Dr. Perry's Testimony Regarding Plaintiff's Work-Life Expectancy.

Defendants argue that Dr. Perry's testimony that Plaintiff's injury reduced his work-life expectancy as an international lawyer by fifty percent or greater must be excluded because Dr. Perry is not qualified to offer that testimony and his opinion is conclusory.

#### 1. Plaintiff's Capacity to Work as an International Lawyer.

"To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *Tin Yat Chin*, 371 F.3d at 40. Here, Dr. Perry has twenty-five years of experience treating patients with spinal injuries as a Medical Advisor at the Occupational and Industrial Orthopedic Center at NYU Langone Medical Center. He has served as a Medical Director and Medical Advisor for the NYU Langone Return to Work Program, which focuses on helping individuals at risk for long-term disability enter the workforce. According to Dr. Perry, approximately seventy-five percent of his practice deals with patients with spinal injuries. He is not, however, a rehabilitation expert and does not hold any certifications in the vocational training field. In addition, he has testified that he "does not know the job requirements of an international lawyer." (Doc. 87 at 8.)

5

Dr. Perry's medical education and extensive experience working with patients with spinal injuries who seek to return to the workforce qualify him to testify about the daily challenges faced by individuals with spinal injuries in their personal and professional lives. His background does not, however, qualify him to assess Plaintiff's career prospects as an international lawyer. Dr. Perry has no "superior knowledge, education, experience, or skill" in conducting formal vocational assessments and admits to being unfamiliar with the vocational demands of a career in international law. He is therefore not qualified to opine on whether and to what extent Plaintiff's injuries will impair his efforts to become an international lawyer.

### 2. Plaintiff's Daily Life.

Dr. Perry testified that he did not use specific calculations to arrive at his fifty percent estimate for Plaintiff's work-life capacity. Instead, he described the fifty percent estimate as an approximation reflecting his experience working with other paraplegic patients and the likelihood that Plaintiff's ability to work would diminish over time:

> I would say that the reality is that when he's 30, he may be able to do more than he can when he's 50. So he may be able to work 60 percent capacity at the age of 30, maybe only 40 percent at the age of 50. He may be able to work to the age of 50, but not work until the age of 65 or 70. So I think in total it's reasonable to state that his number -- his ability to work is diminished by half because of those factors.

(Doc. 97-3 at 16.) Dr. Perry also explained that he considered Plaintiff's day-to-day challenges:

> He's going to have difficulties functioning, he's going to have difficulties getting dressed in the morning, he's going to have difficulties getting to work, he's going to have difficulties getting into a building, including in Nassau County court, which has a lot of steps to get into. And if you're in a wheelchair, you have to go around the back, and the whole commotion, if you need the handicap accessible in Nassau Court or Manhattan Court or Queens Court for that matter. So getting around buildings is difficult. The fact that he has to self-catheterize when he has to go -- when he has to go take a break to urinate, it's not as simple as the way you or I go urinate. So these are very difficult. It's difficult. The whole day is difficult for a paraplegic.

*Id.* at 17. He further stated, "I think that 50 percent is giving him the benefit of the doubt

6

and is with the best of circumstances." (Doc. 97 at 12.) In Dr. Perry's experience, "[v]ery few, if any" of the paraplegic patients whom he has treated "have engaged in work[-]life capacity beyond 50 percent[.]" *Id.*

Dr. Perry's testimony explains how his experience supports his conclusion, as well as "why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Advisory Committee Notes, 2000 Amendments, Fed. R. Evid. 702. Insofar as it is not specific to a career as an international lawyer, Dr. Perry's testimony that Plaintiff's work-life capacity may vary and that it is rare for the work-life expectancy of paraplegic patients to exceed fifty percent is an opinion informed by his extensive experience. It therefore meets the reliability standard of Rule 702 and need not be excluded as speculative or conjectural. *See Boucher*, 73 F.3d 18, 21 (2d Cir. 1996) ("[E]xpert testimony should be excluded if it is speculative or conjectural[.]"). The degree to which the opinion is imprecise may be explored on cross-examination. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). The weight, if any, to be accorded the opinion will be the province of the jury. *See McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995) ("Disputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony."); *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 765 (7th Cir. 2013) ("The jury must still be allowed to play its essential role as the arbiter of the weight and credibility of expert testimony.").

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART Defendants' motion to limit Dr. Perry's testimony regarding Plaintiff's work-life expectancy. Dr. Perry may not testify that Plaintiff's "work-life expectancy" as an international lawyer "will be compromised by 50% or greater." However, Dr. Perry may opine regarding the personal and professional challenges faced by individuals with spinal injuries. He may testify that Plaintiff's work capacity may vary as he ages, and that it is rare for the work-life expectancy of paraplegic patients to exceed fifty percent.

## CONCLUSION

For the foregoing reasons, Defendants' motion to limit Dr. Perry's testimony (Doc. 87) is GRANTED IN PART and DENIED IN PART.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 22nd day of December, 2022.

Christina Reiss, District Judge
United States District Court