U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2023 MAR 23   PM 4: 33

CLERK
BY ᏝᎯᏔ
DEPUTY CLERK

RICHARD GRAJEDA,                    )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )       Case No. 2:20-cv-00165
                                    )
VAIL RESORTS INC., VAIL RESORTS     )
MANAGEMENT COMPANY, and OKEMO       )
LIMITED LIABILITY COMPANY d/b/a/    )
OKEMO MOUNTAIN RESORT,              )
                                    )
        Defendants.                 )

**ENTRY ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO LIMIT THE TESTIMONY
OF PLAINTIFF'S EXPERT DICK PENNIMAN**
(Doc. 88)

Plaintiff Richard Grajeda brings this negligence action against Vail Resorts Inc.,

Vail Resorts Management Company, and Okemo Limited Liability Company

(collectively, "Defendants"), seeking damages for injuries he sustained in a collision

while skiing at Okemo Mountain Resort ("Okemo"). Pending before the court is

Defendants' June 1, 2022 motion to limit the testimony of Plaintiff's expert Dick

Penniman. (Doc. 88.) The court held a hearing on September 27, 2022, at which time it

took the motion under advisement.

Plaintiff is represented by Andrew J. Smiley, Esq., Guy I. Smiley, Esq., and

Matthew D. Anderson, Esq. Defendants are represented by Kristen L. Ferries, Esq., Craig

R. May, Esq., Habib Nasrullah, Esq., Joel P. Iannuzzi, Esq., and Thomas P. Aicher, Esq.

**I.    Factual and Procedural Background.**

On December 19, 2019, Plaintiff fell while downhill skiing at Okemo on a

beginner trail named "Open Slope." He alleges that he slid and collided with a

snowmaking station at the center of the trail. Plaintiff suffered significant injuries and

was rendered a paraplegic. On October 15, 2020, Plaintiff filed a complaint alleging a single cause of action for negligence against Defendants, whom he claims own, operate, maintain, and manage Okemo. Plaintiff claims Defendants inadequately padded the snowmaking station because the padding did not extend to the base of the station, allowing him to crash into the station's bare metal pole. He also asserts that Defendants negligently placed the snowmaking station in the center of the trail.

Mr. Penniman is a ski safety consultant who has worked as a professional ski patroller for three seasons during the 1970s. He has a bachelor's degree in economics and continuing education in a number of subjects unrelated to this case. Since the 1970s, he has worked at ski resorts as a volunteer ski patroller, ski patrol director, ski instructor and guide, operations manager, and director of skier services. Since the early 1980s, Mr. Penniman has lectured on ski and avalanche safety and has consulted on mountain operations, skier safety, and avalanche hazard forecasting and mitigation for various ski areas in California, Wyoming, Alaska, Nevada, Chile, and Argentina. His consulting projects in the past twenty years have included trail design and expansion for three ski resorts, although those projects did not include designing a snowmaking system. He is a member of the American Society of Safety Professionals, the International Society for Skiing Safety, and the American Avalanche Association, as well as a board member for the SnowSport Safety Foundation. He has testified as an expert witness on ski safety in state and federal courts in the United States, Canada, and Australia.

Mr. Penniman opines:

1. "The potential for colliding with and sustaining severe injury from an unprotected and exposed steel snowmaking stand-pipe on the Open Slope and Lower Mountain Road trails on the day of the incident was high and was not an inherent risk of recreational, beginner and lower skill-level skiing and snowboarding." (Doc 88-3 at 13.)

2. "Had Okemo Mountain Resort . . . placed the Gilman Tower Shield flush on the snow surface without any gaps for skiers to slide under, [Plaintiff] would not have received the severe injuries he sustained[.]" *Id.* at 14.

3. Defendants' placement of the snowmaking equipment involved in Plaintiff's

2

collision was "unreasonable," *id.* at 13, because they "created a hazardous condition by placing snow making equipment in the center of beginner skiing terrain[,]" and "the failure of the Okemo Mountain Resort to . . . remove the snowmaking stations from between the Open Slope and Lower Mountain Road trails, . . . was/were the cause(s) of [Plaintiff's] injuries." *Id.* at 14.

4. "When a padding device is placed on an object, the customer rightly assumes that the device will serve the function it appears to serve. Installing a device that looks like a pad, but does not serve that function is clearly deceptive creating a false impression and a false sense of security." *Id.* at 11. Because skiers are unlikely to be aware of objects such as snowmaking standpipes or lift tower access ladders and bolts, "adding unnecessary additional risks of such man-made objects to beginner and lower skill-level trails and slopes was widely viewed as unacceptable in the North American mountain resort industry prior to and in 2019." *Id.* at 12.

In his deposition, Mr. Penniman acknowledged: "I don't have a degree, but I have a pretty good idea what causes serious injuries." (Doc. 88-4 at 13.) He conceded that he is unable to quantify the difference in impact Plaintiff would have sustained had he struck the snowmaking equipment with or without a properly installed pad. *Id.* ("Q: And 'I'm not here to say that if this Gilman product was properly installed, the impact forces would be "x" amount less than that.' Not here to say that either? A: That's correct.").

On June 1, 2022, Defendants filed a motion to limit the testimony of Mr. Penniman, arguing that he is not qualified to offer opinions on causation, snowmaking equipment placement, or customer expectations and that his opinions contain impermissible legal conclusions, invade the province of the jury, and are not based on reliable methodologies. (Doc. 88.) Plaintiff responded on July 5, 2022 (Doc. 96), and Defendants replied on July 19, 2022. (Doc. 101.)

## II.   Conclusions of Law and Analysis.

The admissibility of expert testimony is governed by Fed. R. Evid. 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the

3

case.

Rule 702 obligates the court to serve as a gatekeeper for expert testimony, ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

Expert testimony that is admissible under Rule 702 may still be excluded under Fed. R. Evid. 403 if its "probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. These dangers are particularly pronounced in the context of expert testimony, given the unique weight that a jury may place on such testimony. *See Daubert*, 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.") (internal quotation marks omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596; *see also United States v. LaVictor*, 848 F.3d 428, 444 (6th Cir. 2017) (holding that "[a]ny emerging prejudice [from an expert witness's testimony] was addressed during cross-examination").

## A.     Whether Mr. Penniman's Testimony that Plaintiff's Injuries Did Not Result from an Inherent Risk of Skiing Must Be Excluded.

Mr. Penniman defines the term "inherent" using the Webster's New World Dictionary, College Edition, and outlines examples of risks he considers to be inherent or not inherent to skiing and snowboarding at commercial ski resorts. (Doc. 88-3 at 10-11.) He concludes that colliding with an unpadded piece of snowmaking equipment is "not an inherent risk of recreational, beginner and lower skill-level skiing and snowboarding." *Id.* at 13. Defendants argue that Mr. Penniman's testimony that Plaintiff's injuries did not result from an "inherent risk" of skiing is inadmissible because it is a legal conclusion, is conclusory, and creates a danger of unfair prejudice that substantially outweighs its

4

probative value. Plaintiff responds that "[i]t is completely appropriate for a ski safety expert to opine on whether an accident-causing condition is an obvious or necessary hazard inherent to skiing." (Doc. 96 at 7.)

"Fed. R. Evid. 704(a) provides that '[a]n opinion is not objectionable just because it embraces an ultimate issue.' However, expert testimony that states a legal conclusion or 'communicat[es] a legal standard—explicit or implicit—to the jury' is inadmissible." *McLaughlin v. Langrock, Sperry & Wool, LLP*, 2020 WL 3118646, at *7 (D. Vt. June 12, 2020) (alterations in original) (quoting *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992)). 12 V.S.A. § 1037 provides that "a person who takes part in any sport accepts as a matter of law the dangers that inhere therein insofar as they are obvious and necessary." Courts have found that "whether a risk is inherent, obvious and necessary to a sport is ordinarily an issue appropriate for a jury." *Umali v. Mount Snow Ltd.*, 247 F. Supp. 2d 567, 575 (D. Vt. 2003) (citing *Dillworth v. Gambardella,* 970 F.2d 1113, 1117-18 (2d Cir.1992)).

"[A]lthough an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir.1991); *see also Lipton v. Mountain Creek Resort, Inc.*, 2019 WL 4597205, at *7 (D.N.J. Sept. 23, 2019) ("[I]nterpretation of the meaning of the ski statute itself would not be a proper subject of expert testimony in any event."). By testifying that the alleged cause of Plaintiff's injury was "not an inherent risk" of skiing, Mr. Penniman seeks to tell the jury how to decide the case. *See United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("When an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.") (emphasis in original); *see also Difrancesco v. Win-Sum Ski Corp.*, 2017 WL 1046741, at *12 (W.D.N.Y. Mar. 20, 2017) (excluding Mr. Penniman's opinion on whether the risks of riding a chairlift are inherent to skiing because "[t]his does not require an expert opinion one way or the other"). This is not permissible.

Correspondingly, Mr. Penniman's grafting of his own definition of "inherent risk"

onto § 1037 impermissibly "usurp[s] the function of the judge." *Marx & Co. v. Diners' Club*, 550 F.2d 505, 512 (2d Cir. 1977). As the D.C. Circuit has noted, "[e]ach courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards." *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997); *Marx & Co.*, 550 F.2d at 509-10 ("It is not for witnesses to instruct the jury as to applicable principles of law, but for the judge."). The danger of allowing an expert to instruct the jury on the law "is that the jury may think that the 'expert' in the particular branch of the law knows more than the judge—surely an inadmissible inference in our system of law." *Marx & Co.*, 550 F.2d at 512 (footnote omitted).

The court therefore GRANTS Defendants' motion to exclude Mr. Penniman's "inherent risk" opinions at trial.

### B.   Whether Mr. Penniman's Testimony Regarding the Cause of Plaintiff's Injuries Must Be Excluded.

Defendants seek to exclude Mr. Penniman's testimony that Plaintiff's injuries were caused by sliding through a gap between the snowmaking equipment's padded shield and the snow and striking the equipment's metal base because Mr. Penniman is not qualified to offer testimony on the causal mechanism of Plaintiff's injury. Defendants further contend his causation opinion is based on speculation rather than on a reliable methodology. Finally, Defendants contend that "Mr. Penniman is merely regurgitating Plaintiff's (speculative) version of events" about which he has no personal knowledge. (Doc. 88 at 8.) The court agrees.

Whether a witness is qualified as an expert by his knowledge, skill, experience, training, or education is a "threshold question" that the court must resolve before determining whether his opinions are admissible. *Nimely v. City of New York*, 414 F.3d 381, 396 n.11 (2d Cir. 2005). Mr. Penniman has practical experience in the ski industry and experience as a ski patroller and ski patrol director. *See Lipton*, 2019 WL 4597205, at *3 ("Mr. Penniman has over thirty years of experience working in the ski industry as a ski patrol director, ski patroller, and director of skier services."). *But see Difrancesco*,

2017 WL 1046741, at *14 (excluding Mr. Penniman's opinion based on "his experience operating ski lifts, observing at ski resorts, and investigating skiing accidents" because his "expertise does not rise to the level that it should be credited as an expert"). "[B]ecause a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields." *Nimely*, 414 F.3d at 399 n.13. Although Mr. Penniman's experience may qualify him to testify as an expert witness on certain issues related to ski safety, it does not constitute "superior knowledge, education, experience, or skill [regarding] the subject matter of the proffered testimony[,]" which is whether Plaintiff's injuries were caused by striking a padded or unpadded snowmaking station. *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004).

Even if Mr. Penniman were qualified as an expert witness, the court must "make certain that [as] an expert, whether basing testimony upon professional studies or personal experience, [he] employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265-66 (2d Cir. 2002) (internal quotation marks omitted) (quoting *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999)). An expert witness's testimony may not be conclusory or speculative. *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) ("At trial, proffered expert testimony should be excluded if it is speculative or conjectural . . . ; the [a]dmission of expert testimony based on speculative assumptions is an abuse of discretion[.]") (first alteration in original) (internal quotation marks and citations omitted).

"If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Advisory Committee Notes, 2000 Amendments, Fed. R. Evid. 702. An expert may not merely serve as a conduit for the hearsay testimony of another witness. *See Hutchinson v. Groskin*, 927 F.2d 722, 725 (2d Cir. 1991) (finding that counsel improperly used an expert "as a conduit for hearsay testimony"); *Mallatier v. Dooney & Bouke, Inc.*, 525 F.

7

Supp. 2d 558, 664 (S.D.N.Y. 2007) ("[T]he expert witness must in the end be giving his *own* opinion. He cannot simply be a conduit for the opinion of an unproduced expert.") (emphasis in original); *Rotman v. Progressive Ins. Co.*, 955 F. Supp. 2d 272, 283 (D. Vt. 2013) (finding that when an expert witness merely adopts fact witness testimony "to arrive at a theory of causation, he is not testifying as an expert witness based upon specialized knowledge, but rather is acting as a conduit for another witness's testimony in the guise of an expert's opinion").

Mr. Penniman opines that Plaintiff slid under the snowmaking equipment's padding and struck the metal base of the snowmaking equipment based on his "understanding from the discovery documents," including deposition transcripts, investigation reports, investigation photos, and Defendants' "marking/padding guidelines," as well as on his "incident site inspection" and his "education, training, and experience." (Doc. 88-3 at 3-4.) He attributes Plaintiff's injuries to an impact with a metal pole because "[t]o date, no known or documented information has been forthcoming from any source to suggest that there has ever been a serious, life-altering injury to any person impacting a properly installed and configured Gilman TS-2 shield." *Id.* at 5. He also cites deposition testimony from a fact witness stating that she is "not aware of any skier having ever sustained a serious injury when striking a properly installed Gilman Tower Shield product." *Id.* at 5-6.

Mr. Penniman is not a doctor, and his opinion regarding how Plaintiff's injuries were caused is mere conjecture. *See Arista Recs. LLC v. Lime Grp. LLC*, 2011 WL 1674796, at *2 (S.D.N.Y. May 2, 2011) ("The court must ensure that the expert will actually be testifying on issues or subject matters within his or her area of expertise.") (alterations adopted and internal quotation marks omitted). Reliance on anecdotal knowledge that pads generally prevent or minimize ski injuries will not suffice. *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1250 (11th Cir. 2005) ("Uncontrolled anecdotal information offers one of the least reliable sources to justify opinions about both general and individual causation."). Because he is not qualified to offer a causation opinion, because his opinion is speculative, and because he

8

seeks to serve as a conduit for other witnesses' testimony, Mr. Penniman's causation opinion must be excluded under Rule 702.

Even if it were admissible under Rule 702, Mr. Penniman's causation opinion must be excluded under Rule 403. Allowing Mr. Penniman to offer a causation opinion "would be highly prejudicial and have the potential to confuse and mislead the jury as to the role of an expert witness, the limits of his or her knowledge, and interpose the risk that a jury would find such opinions by a[n] . . . expert such as [Mr. Penniman] conclusive." *Doe v. Hartford Sch. Dist.*, 2018 WL 1064572, at *6 (D. Vt. Feb. 26, 2018) (citing *Nimely*, 414 F.3d at 397) (finding that it was "an abuse of the district court's substantial discretion" to allow an expert to testify to the veracity of witnesses' accounts "even were it otherwise admissible" because such expert testimony was "prejudicial, confusing, and misleading to the jury"). Defendants would be unable to mitigate this prejudice through cross-examination or a curative instruction because opinions drawn from fact witnesses "offer[] [Defendants] no opportunity to cross examine the [fact witness] on the statement that establishes [Mr. Penniman's] opinion." *United States v. Reyes*, 18 F.3d 65, 69 (2d Cir. 1994) (describing the "principal vice of hearsay evidence").

For the foregoing reasons, the court GRANTS Defendants' motion to exclude Mr. Penniman's opinions at trial that Plaintiff's injuries were caused by his collision with a metal pole.

## C.    Whether Mr. Penniman's Testimony that Defendants' Placement of the Snowmaking Equipment Was Unreasonable Must Be Excluded.

Defendants seek to exclude Mr. Penniman's opinion that Defendants' placement of snowmaking equipment in the middle of a beginner ski trail was "unreasonable." (Doc. 88-3 at 13.) They contend that Mr. Penniman is not qualified to render this opinion because he lacks "specialized knowledge regarding the design of a snowmaking system," (Doc. 88 at 13) (internal quotations omitted), and because his opinion is based solely on "common sense." *Id.* at 14.

Plaintiff argues that Mr. Penniman's qualifications to provide expert testimony

regarding the location of snowmaking equipment on a beginner ski trail are based on his professional experiences in the ski industry, including his work as a ski patroller and ski patrol director, his consulting work on projects involving trail safety and design, his membership in multiple ski and safety organizations, and his experience as a ski safety lecturer and trainer.

If an "expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude [the expert's] testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent." *Davids v. Novartis Pharms. Corp.*, 857 F. Supp. 2d 267, 277 (E.D.N.Y. 2012) (internal quotation marks omitted). Mr. Penniman's professional experience includes hazard evaluation and trail design. This does not, however, qualify him to opine on the "reasonableness" of the placement of a piece of snowmaking equipment based on "common sense" that is "only slightly more than [that of] a layperson." *Difrancesco*, 2017 WL 1046741, at *14 ("Given that the focus of Penniman's expertise is more on trails (such as avalanches); his experience is only slightly more than a layperson regarding ski school policies.").

Mr. Penniman's use of "reasonableness" as a standard is especially problematic as it invades the province of the jury. "[T]estimony encompassing an ultimate legal conclusion based upon the facts of the case is not admiss[i]ble, and may not be made so simply because it is presented in terms of industry practice." *Bilzerian*, 926 F.2d at 1295. Mr. Penniman's opinion that Defendants' snowmaking equipment placement was "unreasonable" is thus not "appropriate for expert testimony." *Secs. & Exch. Comm'n v. Am. Growth Funding II, LLC*, 2019 WL 1772509, at *2 (S.D.N.Y. Apr. 23, 2019) (finding that "whether a reasonable investor would be materially misled by" particular language was an "ultimate legal conclusion" for the jury). Reasonableness is a "determination [that] rests with the jury." *Id.* (quoting *Bilzerian*, 926 F.2d at 1294); *see also King v. Crossland Sav. Bank*, 111 F.3d 251, 259 (2d Cir. 1997) (noting that in negligence actions "the assessment of reasonableness generally is a factual question to be addressed by the jury").

To the extent Defendants contend that Mr. Penniman's opinion regarding the location of their snowmaking equipment is based solely on common sense, the court agrees that "common sense" alone is insufficient. Jurors may rely on their own common sense to reach this same conclusion. *See United States v. Huezo*, 546 F.3d 174, 182 (2d Cir. 2008) ("[J]urors are entitled, and routinely encouraged, to rely on their common sense and experience in drawing inferences."); *Wiener v. AXA Equitable Life Ins. Co.*, 2019 WL 1228074, at *9 (S.D.N.Y. Mar. 15, 2019) ("Courts within this Circuit have routinely excluded expert testimony when the testimony was based on nothing more than experience and common sense."); *Reyes v. Delta Dallas Alpha Corp.*, 2000 WL 526851, at *3 (S.D.N.Y. May 2, 2000) (excluding expert testimony where "there [was] no evidence that [the expert] relie[d] on anything more than common sense guidelines, as opposed to industry standards[]"). Mr. Penniman's assertion that it "is common sense" that "creating man-made structures in the fall line of beginner and lower skill-level trails and slopes should be avoided unless there is a substantially level or low angle slope far enough above the structure to allow out-of-control or sliding customers to slow to a near stop before reaching fixed objects" (Doc. 88-3 at 10) is thus inadmissible.

Mr. Penniman's citation to "standard custom and practice in the mountain resort industry" to support his opinion does not alter the court's conclusion. *Id.* at 6. "Experts may . . . offer testimony discussing 'ordinary practices and usages' in a particular industry." *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 46 (S.D.N.Y. 2016); *see also Marx & Co.*, 550 F.2d at 509 ("Testimony concerning the ordinary practices of those engaged in the securities business is admissible under the same theory as testimony concerning the ordinary practices of physicians or concerning other trade customs: to enable the jury to evaluate the conduct of the parties against the standards of ordinary practice in the industry."). Courts have, however, required identification of the custom, practice, or experience that "led to [their] conclusion or provided a basis for [their] opinion." *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 132 (2d Cir. 2006) (allowing an expert to testify on custom and practice based on experience

where he explained how his experiences informed his testimony).[1]

Mr. Penniman cites ski safety standards promulgated in a 1980 report by the American Society of Testing and Materials and a generic "safety hierarchy" published in a 1986 journal article. These over thirty-years-old sources do not allow the court to determine that his opinion reliably applies modern standards widely accepted in the ski industry. *See Grdinich v. Bradlees*, 187 F.R.D. 77, 81-82 (S.D.N.Y. 1999) ("[N]othing in [the expert's] deposition or expert report indicates that industry standards for the display of merchandise actually exist, other than general common-sense guidelines, such as stacking heavy items on lower shelves. Without 'industry standards' to rely upon, [the expert] seems to base his conclusions on his own authority.").

Even if it were admissible, Mr. Penniman's testimony concerning the reasonableness of the location of Defendants' snowmaking equipment must be excluded under Rule 403 because allowing Mr. Penniman to so opine poses a substantial risk that the jury would give undue weight to an opinion merely because it comes from an "expert." *See United States v. Cruz*, 363 F.3d 187, 194 (2d Cir. 2004) ("Where an expert strays from the scope of his expertise, 'some jurors will find it difficult to discern whether the witness is relying properly on his general experience and reliable methodology, or improperly on what he has learned of the case.'"); *Dreyer v. Ryder Auto. Carrier Grp., Inc.*, 367 F. Supp. 2d 413, 448 (W.D.N.Y. 2005) (excluding expert testimony under Rule 403 where the expert's "proposed opinion and testimony . . . constitutes unsupported speculation offered by a proposed expert on a subject outside his field of claimed expertise"). In the absence of applicable industry standards, the risk of unfair prejudice to

---

[1] *See also Reach Music Pub., Inc. v. Warner Chappell Music, Inc.*, 988 F. Supp. 2d 395, 405 (S.D.N.Y. 2013) (admitting expert testimony on industry custom and practice based on the expert's experience where the expert "provide[d] an explanation of how that experience [was] a sufficient basis for his opinion and that it was reliably applied to generate this opinion"); *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 529 (S.D.N.Y. 2001) (excluding expert testimony where the expert's "report [did] not reveal how he [had] made use of his extensive qualifications" and his "characterization of the [industry] standard [was] so vague as to be unhelpful to the jury"), *abrogated on other grounds by Casey v. Merck & Co., Inc.*, 653 F.3d 95 (2d Cir. 2011).

Defendants from Mr. Penniman's opinion substantially outweighs any probative value of his testimony, and his opinion must therefore be excluded under Rule 403.

For the reasons stated above, Defendants' motion to limit Mr. Penniman's testimony regarding the reasonableness of Okemo's placement of its snowmaking equipment is GRANTED.

### D.   Whether Mr. Penniman's Testimony Related to Customer Expectations Must Be Excluded.

Defendants argue that Mr. Penniman's opinions regarding skier, or "customer," expectations and the conclusions he draws from those opinions must be excluded, because Mr. Penniman is not an expert in human behavior and fails to explain how his opinions are based on his experience. Mr. Penniman's alleged expertise is in ski safety and ski operations, and his lengthy professional experience is sufficient to qualify him as an expert in those fields. He is not trained in human behavior, psychology, or any other field relevant to skier assumptions or behavior. Although his opinion on skier behavior and assumptions "may be informed by his experience operating ski lifts, observing at ski resorts, and investigating skiing accidents, . . . this expertise does not rise to the level that it should be credited as an expert." *Difrancesco*, 2017 WL 1046741, at *14. Mr. Penniman thus lacks "knowledge, skill, experience, training, or education" that would qualify him as an expert on human behavior under Rule 702.

Mr. Penniman, however, is amply qualified to testify regarding the typical risks of a beginner ski trail, based on his professional experience. He may thus opine and testify at trial that the placement of a snowmaking station in the middle of a beginner trail poses special risks for the novice skier who might not anticipate this fixed object or have the dexterity to successfully navigate around it. In this respect, Mr. Penniman may testify as to consumer expectations regarding the characteristics of a beginner trail. His years in the ski industry and his experience in trail design bring these opinions within the scope of his expertise. Moreover, there is no substantial prejudice and certainly no unfair prejudice to Defendants in allowing him to offer such an opinion. *See* Fed. R. Evid. 403. It is not inflammatory and may be helpful to members of the jury who do not ski or snowboard.

13

*See* Fed. R. Evid. 702 (requiring expert witness opinions to "help the trier of fact").

## CONCLUSION

For the foregoing reasons, Defendants' motion to limit the testimony of Plaintiff's expert Mr. Dick Penniman (Doc. 88) is GRANTED IN PART and DENIED IN PART. SO ORDERED.

Dated at Burlington, in the District of Vermont, this 23rd day of March, 2023.

Christina Reiss, District Judge
United States District Court